UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL FUENTES, | ) | |
| | ) | |
|     Plaintiff, | ) | Case No. 18-cv-3706 |
| | ) | |
| v. | ) | Hon. Jorge L. Alonso |
| | ) | |
| STUDIO MOVIE GRILL, | ) | |
| | ) | |
|     Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

After plaintiff Daniel Fuentes ("Fuentes") was fired, he filed a three-count complaint against defendant Studio Movie Grill ("SMG"), his former employer. SMG moves to dismiss, arguing plaintiff's claims are time-barred and that plaintiff's retaliation claim exceeds the scope of plaintiff's charge of discrimination. For the reasons set forth below, defendant's motion to dismiss [13] is granted in part and denied in part.

**I.     BACKGROUND**

In his complaint, Fuentes alleges that he worked at SMG for three years and, as of the time of his discharge, was managing 90 of SMG's 5000 employees. With respect to SMG's many employees, SMG maintained an anti-fraternization policy. The breadth of the policy is not clear from the complaint, but plaintiff alleges SMG "allowed its white management personnel to communicate on social media [with], date and otherwise socialize [with SMG personnel] but demanded its few Latino American management personnel not to socialize with SMG personnel." (Complt. ¶ 11). Plaintiff alleges that, on the day he complained about discriminatory enforcement of the anti-fraternization policy, he was discharged.

After plaintiff's employment was terminated, he "filed a charge of racial and age discrimination against the SMG[.]" (Complt. ¶ 18). Plaintiff did not attach the charge to his complaint, but defendant attached it to its motion to dismiss. In the box for "CAUSE OF DISCRIMINATION" on plaintiff's charge is written "RACE" but not retaliation. The prima facie allegations plaintiff included in his charge are, in their entirety, as follows:

1. I am Mexican (Latino)[.]

2. I was hired by the Respondent (hereinafter "Company"), as a Unit Manager, on April 5, 2013[.]

3. I was terminated on October 8, 2016; the reason given for this employment action was because my management style allegedly made staff feel uncomfortable.

4. A thorough investigation of this allegation was not conducted as I was not given an opportunity to address this allegation before the decision to terminate was rendered against me [fn: Area Manager, Gary Van Gundy, terminated me before Human Resources was given the opportunity to investigate the allegations.]

5. Out of more than 100 Unit Managers throughout the Company, at the time I was terminated, I was one of only two Latinos in that position; more than 90% of the Unit Managers were White (Caucasian)[.]

6. A similarly situated Caucasian Unit Manager, out of the store in Indianapolis, had numerous sexual harassment complaints, from customers and staff, and was afforded numerous investigations and was ultimately allowed to keep his job despite serious allegations and actual proof of inappropriate manager behavior/communication/interaction[.]

7. Another similarly situated Caucasian Unit Manager who was married and yet also held out as being in an open relationship with a server, in violation of company policy regarding managerial communication and interaction with staff, was never investigated or reprimanded and was actually promoted to General Manager of a store in Philadelphia despite his inappropriate behaviors/interactions/communications with company staff.

8. During my three plus year tenure with the Company, I scored very high on the 4 basic metrics used to evaluate unit managerial performance throughout the company.

> 9. My performance as a Unit Manager, particularly with regards to sales and tip ratios, encouraged the company to consider tracking tip percentages per server since my servers were operating at a more efficient and more productive rate than most other Unit Managers' servers throughout the company.
>
> Ultimately, the employment decision to terminate me, based on nebulous allegation of me making staff feel uncomfortable was hasty as it was never fully investigated. Human resources wasn't given time to investigate any of this allegation and no one came to me for my input on any such allegation before I was terminated. Furthermore, similarly situated Caucasian Unit Managers, who were known for repeated and consistent unprofessional behavior, communications and interactions with staff were either allowed an opportunity to either keep their jobs or even get a promotion. The unusually hasty and overly harsh decision to terminate my years of employment with the company for little to no reason or investigation, when compared to the pattern for how similarly situated Caucasian Unit Managers were handled under more extreme manager-staff accusation; and combined with the fact that over 90% of the Unit Managers were white at the time of my termination suggests that I was treated differently because of my race. This discriminatory employment action has caused me extreme financial and emotional distress for which I seek a remedy through the Equal Employment Opportunity Commission.

[Docket 14-1 at 4-6]. On February 8, 2018, the EEOC issued a notice of right to sue. This, too, was attached to defendant's motion to dismiss.

On May 25, 2018, plaintiff filed his complaint in this Court. In his complaint, plaintiff alleges that defendant discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964 (Count I); that defendant retaliated against him for complaining about "harassment, racism and unfair practice" (Complt. ¶ 30) in violation of Title VII (Count II); and that defendant discriminated against him on the basis of his race in violation of the Illinois Human Rights Act, 775 ILCS 5/1-101 et seq. (Count III).

Defendant moves to dismiss.

## II.    STANDARD ON A MOTION TO DISMISS

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P.

3

12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

## III. DISCUSSION

Defendant moves to dismiss on the grounds that plaintiff failed to exhaust administrative remedies and failed to file his complaint in time. Failure to comply with a statute of limitations is an affirmative defense, as is failure to exhaust administrative remedies. *See Stuart v. Local 727, Int'l Bhd. of Teamsters*, 771 F.3d 1014, 1017 & 18 (7th Cir. 2014); *Salas v. Wisc. Dep't. of Corrections*, 493 F.3d 913, 921 & 922 (7th Cir. 2007). Plaintiffs need not plead around an affirmative defense, and the Court may dismiss on the basis of an affirmative defense only where plaintiffs allege, and thus admit, the elements of the affirmative defense. *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014); *United States Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003).

In support of its motion, defendant attaches plaintiff's charge of discrimination and the notice of right to sue issued by the EEOC. On a motion to dismiss under Rule 12(b)(6), a court may not consider "matters outside the pleadings" without converting the motion to one for summary judgment. Fed.R.Civ.P. 12(d). The pleadings include the complaint and answer (Fed.R.Civ.P. 7(a)), as well as attachments thereto (Fed.R.Civ.P. 10(c)). Documents attached to a motion to dismiss are not part of the pleadings unless they are referred to in plaintiff's complaint and are central to plaintiff's claim. *See EEOC v. Concentra Health Serv., Inc.*, 496 F.3d 773, 778 (7th Cir. 2007).

The Court agrees with defendant (and plaintiff does not seem to object) that the charge of discrimination is part of the pleadings. Plaintiff refers to it in his complaint (Complt. ¶ 18), and it is central to his claim. *See Griffin v Evanston/Skokie Comm. Consol. School Distr. 65*, Case No. 12 C 9828, 2013 WL 6255225 at *2 (N.D. Ill. Dec. 3, 2013). It is central to plaintiff's claim, because exhaustion of administrative remedies is a requirement to sue under Title VII.[1] The Court does not, however, agree that the notice of right to sue is part of the pleadings. Plaintiff did not refer to it in his complaint.

### A. Statute of limitations

Defendant first argues that plaintiff's complaint should be dismissed as time-barred. Individuals seeking relief under Title VII must file suit within 90 days of receiving a notice of right to sue from the Equal Employment Opportunity Commission ("EEOC"). 42 U.S.C. § 2000e-5(f)(1). The 90-day period "begins to run on the date that the EEOC right-to-sue notice is actually received *either by the claimant or by the attorney representing him in the Title VII action.*" *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (2001) (emphasis in original) (quoting *Jones v. Madison Service Corp.*, 744 F.2d 1309, 1312 (7th Cir. 1984)). The Seventh Circuit has also held that the "actual notice rule does not apply to plaintiffs who fail to receive actual notice through their own fault," such as by failing to alert the EEOC to a change of address. *Houston v. Sidley & Austin*, 185 F.3d 837, 839 (7th Cir. 1999).

In this case, plaintiff has not included any allegations in his complaint as to the date he or his attorney actually received the notice of right to sue. Thus, plaintiff has not pleaded himself out of court with respect to the statute of limitations. Nonetheless, defendant argues that the

---

[1] The result would be different if the plaintiff were the EEOC, which does not face the same limits as an individual in bringing suit. *See Concentra*, 496 F.3d at 778.

Court should *assume* plaintiff received the notice five days after it was mailed by the EEOC. In support of that proposition, defendant cites a Seventh Circuit case from which defendant takes a few words out of context. Specifically, defendant cites *Loyd v. Sullivan*, 882 F.2d 218, 218 (7th Cir. 1989) for the proposition, "unless proven otherwise, the receipt date is presumed to be five days from the mailing date."

The Court cannot agree that *Loyd* requires this Court to assume plaintiff actually received the notice of right to sue five days after it was mailed. For starters, *Loyd* is not a Title VII case. It is a Social Security case brought under 42 U.S.C. § 405(g). Next, defendant has taken the quotation entirely out of context. The quoted language is not part of a legal principle expounded by the Seventh Circuit; it is part of the fact section in which the Seventh Circuit is summarizing a letter sent by the Appeals Council of the Social Security Administration to a claimant. The quotation in context reads:

> The Appeals Council ("Council") upheld the Administrative Law Judge's decision and, on January 15, 1986, the Council sent Loyd a letter to this effect. The Council's letter explained that pursuant to 42 U.S.C. § 405(g), Loyd had the right to challenge the judgment by bringing a civil action within sixty days from the receipt of the notice; unless proven otherwise, the receipt date is presumed to be five days from the mailing date.

*Loyd*, 882 F.2d at 218. Why might the Appeals Council have informed a claimant that the letter would be presumed to be received five days after it was sent? Perhaps it is because a Social Security regulation states, "Date you receive notice means 5 days after the date on the notice, unless you show us that you did not receive it within the 5-day period." 20 C.F.R. § 416.1401. Defendant has not cited a similar regulation applicable to EEOC notices. Under Title VII, the law, as explained above, is that the statute begins to run 90 days after the notice of right to sue is *actually* received by the plaintiff or his lawyer, unless it is the plaintiff's own fault that he did not receive the notice.

6

The plaintiff, having included no allegations in his complaint as to when he (or his attorney) actually received the notice of right to sue, has not pleaded himself out of court with respect to the statute of limitations. Defendant's motion to dismiss on statute-of-limitations grounds is denied.

### B. Failure to exhaust

Defendant moves to dismiss plaintiff's retaliation claim (Count II), arguing that it is outside the scope of the charge of discrimination plaintiff filed with the EEOC. The Court agrees.

As the Seventh Circuit has explained, "a plaintiff can only bring claims under Title VII or the [Illinois Human Rights Act] that he has included in the original charge filed with the Equal Employment Opportunity Commission ("EEOC") or the [Illinois Department of Human Rights]." *Cervantes v. Ardagh Group*, 914 F.3d 560, 564 (7th Cir. 2019). The Seventh Circuit recognizes an exception and allows plaintiffs to bring claims that are "like or reasonably related" to the EEOC charge such that they "can be reasonably expected to grow out of an EEOC investigation of the charges." *Cervantes*, 914 F.3d at 565. Generally, though, retaliation claims are not considered to be reasonably related to discrimination claims. *Cervantes*, 914 F.3d at 565 ("As a general matter, we do not consider a retaliation charge to be reasonably related to a discrimination charge."); *Swearnigen-El v. Cook Cty. Sheriff's Dept.*, 602 F.3d 852, 864-65 (7th Cir. 2010) ("Normally, retaliation and discrimination charges are not considered 'like or reasonably related' to one another."). In both cases, the Seventh Circuit concluded that the plaintiff's claim was outside the scope of the charge of discrimination. *Cervantes*, 914 F.3d at 566; *Swearnigen-El*, 602 F.3d at 865; *see also Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002) ("We do not believe [plaintiff's] retaliation claim is like or

7

reasonably related to this discrimination charge. . . . [T]he charge makes no mention of a complaint of discrimination, to whom it was made or what adverse action allegedly resulted from the complaint.").

Here, in plaintiff's charge of discrimination, he listed race but not retaliation as the basis of defendant's discrimination against him. Nowhere in his charge did plaintiff mention the word retaliation. Nowhere in his charge did plaintiff describe what complaint of discrimination he made or to whom. Instead, plaintiff describes the evidence that he believes shows he was treated differently on the basis of his race. On its face, the charge does not include any allegations of retaliation. Plaintiff's argument as to why his retaliation claim is reasonably related to his race discrimination claim is hard to follow. In his brief, plaintiff repeatedly emphasizes that he used the word "communications" in his charge, but he does not explain how that reasonably relates to his retaliation claim. It is true that, in his charge, plaintiff alleged that his communications with staff were treated differently from white employees' communications with staff, which suggests a difference of treatment on the basis of race. Nowhere in his charge, though, does he allege he communicated to his employer (i.e., complained about) his belief that Latino managers were treated differently from white managers. Plaintiff's retaliation claim is outside the scope of his charge of discrimination.

Accordingly, defendant's motion to dismiss Count II is granted, and Count II is dismissed with prejudice.

Case: 1:18-cv-03706 Document #: 24 Filed: 04/29/19 Page 9 of 9 PageID #:93

## IV. CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part defendant's motion to dismiss [13]. Count II is dismissed with prejudice. Status hearing set for 5/9/19 at 9:30 a.m.

SO ORDERED. ENTERED: April 29, 2019

_____
JORGE L. ALONSO
United States District Judge